IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **C.G., a minor, by and through her parents, and next friends, P.G. and D.G.** | : : : : | |
| **Plaintiff,** | : : | |
| v. | : : | No:_____ |
| **Saucon Valley School District** | : : : | **Jury Trial Demand** |
| **Defendant.** | : | |

## VERIFIED COMPLAINT

Plaintiff C.G., by and through her parents and next friends P.G. and D.G. ("Plaintiffs") brings these claims for relief against Defendant Saucon Valley School District and alleges as follows:

## INTRODUCTION

1. Plaintiff C.G. is a 16-year-old student with complex physical, psychological, and emotional needs who has been unable to attend school in-person since it began on August 23, 2021, because Defendant refuses to allow her to bring her service dog with her to help monitor and prevent her seizure activity. Among other disabilities, she has intractable complex partial epilepsy, acute anxiety, autism, depression, and cerebral palsy. Soon after turning six years old, C.G. had brain surgery to remove a lesion in her brain in an effort to try to control her epileptic seizures. The surgery

was only partially successful, and medications are only partially effective in mitigating her seizures.

2. In February 2021, Merlin's Kids, a non-profit organization that has trained more than 1000 service animals, provided C.G. with a trained service dog, George. Before becoming her service dog, George underwent more than 1500 hours of extensive training which included training in the ability to detect rising cortisol levels on C.G.'s breath. Cortisol, a stress hormone, is released prior to increases of adrenaline, which can cause C.G. to have a panic attack or a seizure. C.G. and her family received more than 40 hours of training over 12 weeks to become fully certified handlers/trainers for George. C.G.'s mom, P.G., subsequently asked the Defendant to allow George to attend school with C.G.

3. The Defendant, Saucon Valley School District, however, has refused to provide C.G. the reasonable accommodation of allowing her to attend school with George in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendant's reasoning for denying this accommodation has varied. The Defendant has asked for documentation and certification for George that is contrary to the Americans with Disabilities Act. At other times, Defendant has said that C.G. could attend

school with George, but only if her parents could obtain certification that George would not need to be taken outside to use the bathroom during the school day. C.G.'s mother was additionally told that George would not be allowed to use the bathroom anywhere on school property. At other times, Defendant has denied that George is a service animal. The Defendant's refusal to grant C.G. a reasonable accommodation has caused her to experience increased anxiety and depression and deprived her of invaluable in-person education.

    4.    With the school year already underway and having failed to receive a reasonable accommodation from the Defendant, C.G.'s parents now ask the Court for declaratory and injunctive relief and for a trial on the merits to determine liability and damages.

## JURISDICTION AND VENUE

    5.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this being a case arising under the laws of the United States.

    6.    Plaintiff's claims are authorized by 42 U.S.C. § 1983, 29 U.S.C. § 794a, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 12133.

    7.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) since the Defendant resides in this district.

## PARTIES

8. Plaintiff C.G. is a student enrolled in the 11th grade at Saucon Valley High School, which is part of the Saucon Valley School District, and who resides with her parents in Hellertown, Pennsylvania.

9. P.G. is C.G.'s mother.

10. D.G. is C.G.'s father.

11. Defendant Saucon Valley School District is a public school district located in Northampton County, Pennsylvania (the "District" or "Saucon Valley").

12. Saucon Valley's primary place of business is located at 2097 Polk Valley Rd, Hellertown, PA 18055.

## FACTUAL ALLEGATIONS

### C.G. is a Person with a Disability

13. C.G. is a sixteen-year-old with Autism Spectrum Disorder, spastic diplegic cerebral palsy, intractable complex partial epilepsy, Attention Deficit Hyperactivity Disorder, Anxiety Disorder, Depression, chronic Migraines, Dyspraxia (Developmental Coordination Disorder), and Specific Learning Disabilities which have included Math Disorder, Disorder of Written Expression, and an Executive Function Disorder.

14. In July 2016, C.G. had a lesionectomy performed on the right side of her brain where part of her brain was removed in an effort to control her seizures.

15. A grand mal seizure causes a loss of consciousness and violent muscle contractions. Grand mal seizures are the types of seizures most people envision when they think about seizures.

16. C.G. had two grand mal seizures soon after her lesionectomy, one of them at home after her first day back to school after surgery. Most of the time, however, C.G. does not have grand mal seizures.

17. C.G. has an Individualized Education Program ("IEP") from Saucon Valley and receives special education services under the disability classification of Other Health Impairment for her epilepsy and Specific Learning Disability in math problem solving.

18. C.G. takes the prescription drug Lamictal in the morning and in the evening to help control her seizures. Because C.G.'s epilepsy is intractable, medications are only partially successful at controlling it.

19. C.G.'s IEP recognizes that she takes Lamictal, and as an accommodation for her epilepsy, incorporates a seizure protocol / emergency care plan.

20. C.G.'s seizure plan states that the frequency of her seizures is varied, and there is no consistent pattern.

21. C.G.'s seizure plan states that symptoms of her seizures may include staring, confusion, incontinence, combativeness, verbal confusion, lip smacking, and repetitive action behaviors.  Because of these symptoms, at the time it is happening, it can often be difficult to assess whether C.G. is having a seizure.

22. C.G.'s seizure plan lists stress and fatigue, in addition to excessive heat / light exposure changes, as triggers for her seizures.

23. C.G.'s seizure plan provides instructions on the administration of rescue medications, which the school nurse possesses, and requires that emergency services, 911, be called every time C.G. experiences a seizure.  She must then be taken to a hospital.

24. Increased anxiety, if left unaddressed, can cause C.G. to have a seizure.

## C.G. Has a Service Animal

25. C.G. has a service dog named "George."  George is a three-year old American Kennel Club standard poodle.

26. Merlin's Kids, a nonprofit organization that trains shelter dogs to be service animals, has trained and certified George.

6

27. Merlin's Kids has trained more than 1000 service animals.

28. George is a multiple-task trained medical service dog, who has received more than 1500 hours of training over 18 months and an additional 9 plus months of public access exposure training.

29. The tasks that George is trained to perform include Mobility Assistance, DPT (Deep Pressure Therapy), Mitigation of Anxiety, Seizure Response, Additional Medical Alert and Response.

30. George is trained, among other things, to smell rising cortisol levels on C.G.'s breath, to alert C.G. and those around her to an increase in anxiety that can possibly lead to a panic attack or seizure, and to provide deep pressure therapy to help calm her.

31. C.G. and her parents completed training and certification through Merlin's Kids, including a 12-week intensive PSD (Personal Service Dog) behavioral training course and more than 40 additional hours of hands-on training and public access required by Merlin's Kids for full certification for George as a task-trained Service Dog and for C.G. and her parents as fully certified handlers/trainers for George.

32. George went home with C.G. and her parents in February 2021.

33. George has met and surpassed all requirements in public access, task training, and Canine Good Citizen certification protocol.

## Saucon Valley Has Refused C.G. the Reasonable Accommodation of Attending School With George

34. The District was aware that C.G. had a service animal as early as the spring of 2021 when P.G., C.G.'s mother, made them aware of George during IEP team meetings.

35. P.G. had a discussion with C.G.'s IEP team on or about July 22, 2021 during which C.G's use of her service animal at school was discussed. The team met George at that time.

36. At the July 22, 2021, IEP team meeting, C.G. demonstrated to the team that she was trained to handle George. The IEP team was impressed by C.G.'s handing of George.

37. Also at the July 22, 2021, IEP team meeting, P.G. raised the issue of allowing George to use the bathroom during day and asked that C.G. be allowed to take him outside during her lunch period so that George could relieve himself.

38. As a trained service animal, George is trained to relieve himself promptly when given the opportunity.

39. On July 27, 2021, P.G. received an email from the District requiring that she provide certification that George could remain in the

8

school building all day without being taken outside to use the bathroom or needing to be fed.

40. The District's July 27, 2021, email to P.G. also required P.G. to provide certification that C.G. was George's handler.

41. On August 17, 2021, P.G. emailed Dr. Craig Butler, superintendent of the District, stating that C.G. has a disability, providing a description of where George was trained, describing the tasks George is trained to perform, and providing a copy of George's vaccination records. The District did not respond to P.G.'s email.

42. On August 18, 2021, P.G. emailed the District a thorough explanation of the tasks George is trained to perform and the beneficial effect he has had upon C.G. This email describes George's training to detect rising cortisol levels and the detection of behaviors in C.G. that may indicate a seizure.

43. On August 20, 2021, P.G. had a verbal conversation with Dr. Craig Butler asking that the District allow C.G. to attend school with her service animal. P.G. was told that someone would contact her before school started the following Monday.

44. No one from the District contacted P.G. or D.G., C.G,'s father, before school started on August 23, 2021.

9

45. Throughout the week of August 23-27, 2021, Plaintiff's counsel continued to advocate for the District to allow C.G. to attend school with her service animal.

46. On August 30, 2021, P.G. again provided, via email, detailed information to the District about C.G.'s disabilities, George's training, and C.G.'s need for George to attend classes with her. This communication included a letter from C.G.'s psychiatrist's office recommending that C.G. be allowed to attend school with her service animal, a letter from C.G.'s neurologist to the same effect, and a letter from Merlin's Kids detailing George's extensive training and what he is trained to do.

47. As of the date of this Complaint, the District has not provided C.G. with the reasonable accommodation of allowing her to attend school with George and C.G. has not received any educational instruction from the District since school started on August 23, 2021.

**Damages to C.G. Caused by Saucon Valley's Refusal to Allow Her to Attend School with her Service Animal**

48. C.G. has suffered irreparable harm to her educational interests because she has been denied the reasonable accommodation of attending school with her service animal. Specifically, C.G. is irreparably harmed by her inability to access and benefit from in-person educational instruction to the same extent as her non-disabled peers without her service animal.

49. C.G. has suffered, and continues to suffer, irreparable harm in the form of emotional distress, increased anxiety, and depression as a result of the District's outrageous and willful conduct.

## COUNT I
### Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34

50. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

51. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act (ADA). *See* 42 U.S.C. §§ 12102, 12131.

52. George is a dog that is individually trained to do work or perform tasks for the benefit of an C.G. as defined by the ADA's implementing regulations at 28 C.F.R. § 35.104.

53. The tasks George is trained to perform include mobility assistance, deep pressure therapy, mitigation of anxiety, seizure control, and additional medical alert and response.

54. Defendant is a public entity within the meaning of the ADA. *See* 42 U.S.C. § 12131.

55. Defendant has discriminated and is continuing to discriminate against Plaintiff on the basis of his disability in violation of the ADA and its

implementing regulations by: (a) failing to provide reasonable modifications necessary for Plaintiff to participate in Defendant's programs and activities; (b) failing to afford Plaintiff such benefits and services as are offered to individuals without disabilities in a manner that is equal to others; (c) failing to provide Plaintiff with benefits in a manner that is as effective in affording equal opportunity to obtain the same result, gain the same benefit, and reach the same level of achievement as that provided to others  ; (d) utilizing criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; and (e) utilizing criteria or methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Defendant's program with respect to individuals with disabilities.  See 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a), (b)(1), (b)(3), (b)(7).

56. Defendant's unlawful actions were and are intentional, willful, malicious and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on her disability.

57. Plaintiff is, and will continue to be, immediately and irreparably injured by Defendant's actions.

## COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

58. Plaintiff incorporates the allegations in the preceding paragraphs, as if fully set forth herein.

59. Plaintiff is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act.  See 29 U.S.C. §§ 705(9), 705(20), 794; 42 U.S.C. § 12102.

60. Defendant is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.  See 29 U.S.C. § 794

61. Defendant has discriminated and is continuing to discriminate against Plaintiff in violation of Section 504 of the Rehabilitation Act and its implementing regulations by: (a) failing to provide reasonable modifications necessary for Plaintiff to participate in Defendant's programs and activities; (b) failing to afford Plaintiff such benefits and services as are offered to individuals without disabilities in a manner that is equal to others; (c) failing to provide Plaintiff with benefits and services in a manner that is as effective as that provided to others; (d) utilizing criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; and (e) utilizing criteria or methods of administration that have the purpose or effect of

defeating or substantially impairing accomplishment of the objectives of the Defendant's program or activity with respect to individuals with disabilities. See 29 U.S.C. § 794; 34 C.F.R. § 104.4(a), (b)(1)(i), (b)(1)(ii), (b)(1)(iii), (b)(4).

62. Defendant's unlawful actions were and are intentional, willful, malicious and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on his disability.

63. If Defendant continues to engage in unlawful discrimination against Plaintiff, Plaintiff will be immediately and irreparably injured.

64. Defendant has discriminated, and is continuing to discriminate, against Plaintiff in violation of Section 504 of the Rehabilitation Act because 28 U.S.C. §§ 35.136 (the ADA regulation on service animals) is incorporated into the protections of Section 504. *Berardelli v. Allied Services*, 900 F.3d 104 (3d. 2018).

65. Defendant's unlawful actions were and are intentional, willful, malicious and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on her disability.

66. Plaintiff is, and will continue to be, immediately and irreparably injured by Defendant's actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant, together with the following relief:

67. Declare that Defendant's actions and inactions violate Title II of the ADA and Section 504 of the Rehabilitation Act;

68. Issue injunctive relief, on a preliminary and permanent basis, requiring Defendant to grant Plaintiff a reasonable modification allowing her to attend school with her service animal;

69. Award nominal and/or compensatory damages, in an amount to be proven at trial; and

70. Grant such other relief as may be just, equitable, and appropriate, including an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a.

DISABILITY RIGHTS PENNSYLVANIA,

By: __/s/ Morris Scott_____
Morris Scott (PA I.D. 83587)
Lee Wentz (PA I.D.93382)
1800 John F. Kennedy Boulevard,
Suite 900
Philadelphia, PA 19103
(215) 238-8070
(215) 772-3126 (fax)

mscott@disabilityrightspa.org
lwentz@disabilityrightspa.org
Counsel for Plaintiff


DATE: September 3, 2021

## VERIFICATION OF COMPLAINT

1. We, C.G. and D.G., citizens of the Unites States and residents of the Commonwealth of Pennsylvania hereby declare that we have personal knowledge of the facts in the above Complaint.

2. We verify that the facts set forth in it are true and correct to the best of our knowledge, understanding, and belief, and on the advice of counsel.

3. We understand that false statements herein are made subject to the penalties of 28 U.S.C § 1746 relating to unsworn falsification to authorities, in addition to penalties of perjury.

We declare under penalty of perjury that the forgoing is true and correct.



Page 1 of 1